(Slip Opinion) Cite as: 596 U. S. \_\_\_\_ (2022) 1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 20–1775

———

## ARIZONA, ET AL., PETITIONERS *v.* CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 15, 2022]

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–1775

_____

ARIZONA, ET AL., PETITIONERS *v.* CITY AND COUNTY
OF SAN FRANCISCO, CALIFORNIA, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 15, 2022]

CHIEF JUSTICE ROBERTS, with whom JUSTICE THOMAS,
JUSTICE ALITO, and JUSTICE GORSUCH join, concurring.

This case involves a regulation known as the Public
Charge Rule, promulgated by the Department of Homeland
Security in 2019. See 84 Fed. Reg. 41292 (2019). The Rule
set out the test the Department planned to use to determine
whether an applicant for admission into the country or ad-
justment to lawful permanent resident status is "likely at
any time to become a public charge," which would make him
ineligible. 8 U. S. C. §1182(a)(4)(A). Several parties filed
lawsuits arguing that the Rule was unlawful because it de-
fined "public charge" too broadly.

We granted certiorari in this case not to address the mer-
its of that argument, but to decide whether the petition-
ers—13 States which support the Rule—should have been
permitted to intervene in this litigation to defend the Rule's
legality in the Court of Appeals. Petitioners argue that the
answer is yes, in light of the Government's actions.

When this and other suits challenging the Rule were first
brought in 2019, the Government defended it. And when
multiple lower courts, including the District Court here,
found the Rule unlawful, the Government appealed those
decisions. After a change in administrations, though, the
Government reversed course and opted to voluntarily dis-

miss those appeals, leaving in place the relief already entered.

A new administration is of course as a general matter entitled to do that. But the Government then took a further step. It seized upon one of the now-consent judgments against it—a final judgment vacating the Rule nationwide, issued in a different litigation—and leveraged it as a basis to immediately repeal the Rule, without using notice-and-comment procedures. 86 Fed. Reg. 14221 (2021) ("Because this rule simply implements the district court's vacatur of the August 2019 rule . . . DHS is not required to provide notice and comment."). This allowed the Government to circumvent the usual and important requirement, under the Administrative Procedure Act, that a regulation originally promulgated using notice and comment (as the Public Charge Rule was) may only be repealed through notice and comment, 5 U. S. C. §551(5); see *Perez* v. *Mortgage Bankers Assn.*, 575 U. S. 92, 101 (2015). As part of this tactic of "rulemaking-by-collective-acquiescence," *City and County of San Francisco* v. *United States Citizenship and Immigration Servs.*, 992 F. 3d 742, 744 (CA9 2021) (VanDyke, J., dissenting), the Government successfully opposed efforts by other interested parties—including petitioners here—to intervene in order to carry on the defense of the Rule, including possibly before this Court.

These maneuvers raise a host of important questions. The most fundamental is whether the Government's actions, all told, comport with the principles of administrative law. But bound up in that inquiry are a great many issues beyond the question of appellate intervention on which we granted certiorari, among them standing; mootness; vacatur under *United States* v. *Munsingwear, Inc.*, 340 U. S. 36 (1950); the scope of injunctive relief in an APA action; whether, contrary to what "[t]he government has long argued," the APA "authorize[s] district courts to vacate regulations or other agency actions on a nationwide basis," Brief

for Federal Respondents 5, n. 3; how the APA's procedural requirements apply in this unusual circumstance, cf. §551(5); *FCC* v. *Fox Television Stations, Inc.*, 556 U. S. 502, 515 (2009); and more.

It has become clear that this mare's nest could stand in the way of our reaching the question presented on which we granted certiorari, or at the very least, complicate our resolution of that question. I therefore concur in the Court's dismissal of the writ of certiorari as improvidently granted. But that resolution should not be taken as reflective of a view on any of the foregoing issues, or on the appropriate resolution of other litigation, pending or future, related to the 2019 Public Charge Rule, its repeal, or its replacement by a new rule. See *Cook County* v. *Mayorkas*, 340 F. R. D. 35 (ND Ill. 2021), appeal pending, No. 21–2561 (CA7); 87 Fed. Reg. 10571 (2022) (new proposed rule that would "implement a different policy than the 2019 Final Rule").